UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA COCHRAN,

      Plaintiff,

   vs.                                  Case No. 2:13-cv-11756
                                        Hon. Lawrence P. Zatkoff
SHELBY TOWNSHIP, RONALD
LEHMAN, ADAM JENZEN, and
JASON ZUK, in their individual and
official capacities,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse, in the City of Port Huron, State of Michigan, on September 16, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment from Defendants Shelby Township, Ronald Lehman, Adam Jenzen and Jason Zuk [dkt. 28]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendants' motion is DENIED IN PART and GRANTED IN PART.

## II. BACKGROUND

This case revolves around the allegedly improper actions taken on April 24, 2011, by Police Officers Ronald Lehman ("Defendant Officer Lehman"), Adam Jenzen ("Defendant Officer Jenzen") and Jason Zuk ("Defendant Officer Zuk")[1] of the Shelby Township Police Department[2] against Lisa Cochran ("Plaintiff"). The Court finds that the parties do not agree on most of the facts that precipitated Plaintiff's complaint. As such, the Court will provide descriptions of the events that transpired as asserted both by Defendants and by Plaintiff.

### A. DEFENDANTS' TIMELINE OF EVENTS

On April 24, 2011, Plaintiff's sister Laura Daratony ("Daratony") arrived at Plaintiff's residence to assess whether Plaintiff was safe. Daratony testified in her deposition that she was worried about Plaintiff because Plaintiff had not returned any of Daratony's phone calls and had skipped a family holiday event. Daratony also asserts that, in the days leading up to April 24, 2011, Plaintiff told Daratony that Plaintiff had a gun in her bedroom and was planning on using this gun to kill herself and a sibling. Upon arrival at Plaintiff's residence on April 24, 2011, Daratony asserts she knocked on the door and received no response from Plaintiff.

At that time, Daratony called 9-1-1, reporting Plaintiff was suicidal, had threatened to kill a sibling and was in possession of a firearm. Daratony also told police she was nervous that Plaintiff had followed through on her suicidal threats. Daratony's call was directed to the Shelby Township Police Department. Dispatch directed Defendant Officers Lehman and Jenzen to respond to a call from a residence in Shelby Township, Michigan, where there was a "suicidal family member" inside the residence "with another family member" in "the master bedroom which is whre [sic] the gun was." *See* Dkt. # 28, Ex. F, p. 1.

---

[1] Lehman, Jenzen and Zuk will at times be collectively referred to as "Defendant Officers."
[2] Shelby Township, Lehman, Jenzen and Zuk will at times be collectively referred to as "Defendants."

Prior to any of the Defendant Officers arriving, Daratony asserts Plaintiff came to the front door and allowed Daratony and four other family members to enter the residence. Daratony claims that, upon seeing Plaintiff's appearance, she "got worried" and called 9-1-1 a second time. *See* Dkt. # 28, Ex. A, p. 15.  Defendant Officer Lehman, the first to arrive at Plaintiff's residence, represents that Daratony was still on the phone with dispatch when he arrived.  As Defendant Officer Lehman began speaking to Daratony on the porch of the residence, Defendant Officer Jenzen arrived. Defendant Officers Lehman and Jenzen assert that the front door of the residence was open upon their arrival and that Daratony gave each permission to enter the residence. *See* Dkt. # 28, Ex. B, p. 18; Ex. C, p. 15.[3]

Defendants assert Daratony directed Defendant Officer Lehman's attention upstairs to the master bedroom where Plaintiff was located.  Defendant Officers Lehman and Jenzen report that, from the doorway of the bedroom, they observed Plaintiff and found her to be "frantic," yelling incoherently and in an "agitated state" on the bed inside the bedroom. *See* Dkt. # 28, Ex. B, p. 21; Ex. C, p. 15–16. When Defendant Officers informed Plaintiff why they were there, Plaintiff began speaking incoherently, was unable to answer questions, and began screaming at the Defendant Officers.  Defendant Officers Lehman and Jenzen determined at this point that a mental health transport was necessary.

Defendant Officer Zuk arrived after Defendant Officers Lehman and Jenzen began interacting with Plaintiff. Defendant Officer Zuk also agreed that a mental health transport was necessary.  At this point, Defendant Officers Jenzen and Zuk asked Plaintiff to stand up from the bed so they could handcuff her pursuant to Defendant Shelby Township protocol for mental

---

[3] Defendants' motion for summary judgment asserts "it is undisputed that Officer Lehman enters the residence through an **open** front door and first encounters caller Daratony in the living room." *See* Dkt. # 28, p. 2 (emphasis in original).  Although in their depositions Defendant Officers Lehman and Jenzen assert they first encounter Daratony outside the home, the Court finds that there is no dispute that the front door was open prior to Defendant Officers Lehman and Jenzen entering.

3

health transport. Plaintiff refused to comply, however, going limp and attempting to tuck her arms under her torso on her way down to the ground. Defendant Officers Jenzen and Zuk each report grabbing one of Plaintiff's arms so as to allow her to go easily to the ground. Once Plaintiff was on the ground, Defendant Officer Zuk attempted to handcuff her. The Defendant Officers report that Plaintiff resisted Defendant Officer Zuk's initial attempts to handcuff her by either kicking her legs, swinging her arms or by attempting to hide her arms underneath her body. Defendant Officer Zuk was nevertheless able to handcuff Plaintiff. Defendant Officer Zuk remembers hearing a "pop" as he handcuffed Plaintiff's wrists, but he was not sure whether that was the sound of the handcuffs or something else. *See* Dkt. # 28, Ex. D, p. 25. None of the Defendant Officers remember Plaintiff ever indicating that the handcuffs were too tight; Defendant Officer Zuk reports that she "never complained once." *Id*. The Defendants report that Defendant Officers Jenzen and Zuk helped Plaintiff to her feet by placing a hand under each of her arms. *Id*., at p. 24; Dkt. # 28, Ex. C, p. 28. Due to the "pop" Defendant Officer Zuk heard while handcuffing Plaintiff, the Defendant Officers called for medical transport to take Plaintiff to the hospital.

After Defendant Officer Zuk handcuffed Plaintiff, Defendant Officers Lehman and Jenzen escorted Plaintiff out of the bedroom and downstairs to the waiting ambulance. All of the Defendant Officers report that Plaintiff was never placed in the back of a squad car, instead going directly from the residence to the ambulance.[4] Defendant Zuk then searched the bedroom and confiscated one firearm. Defendant Officers assert they removed Plaintiff handcuffs once Plaintiff entered the ambulance, and before Plaintiff left for the hospital.

---

[4] The Court notes that the EMS Report issued on the day of the incident indicates that "[u]pon arrival this 47 year old female was found seated in the back seat of a Patrol vehicle." *See* Dkt. # 28, Ex. G, p. 8.

Defendant Officers assert they had no further contact with Plaintiff. They claim Daratony followed the ambulance to Henry Ford Hospital to involuntarily commit Plaintiff. Plaintiff was released the same day with an "impression" of an "elbow contusion/sprain" and "depression without suicidal intent." *See* Dkt. # 28, Ex H., p. 8.

### B. PLAINTIFF'S TIMELINE OF EVENTS

Plaintiff asserts that, on April, 24, 2011, she was at home and "minding her own business" when Defendant Officers barged into her bedroom, grabbed her out of the bed and "falsely claimed she was suicidal before even speaking with her or assessing the situation." *See* Dkt. # 31, p. 7. Plaintiff claims she asked Defendant Officers to leave her home and informed them that she was not suicidal, but that they refused. Instead, she asserts she was "**violently thrown** to the floor" and was then handcuffed by Defendant Officers Zuk and Jenzen. *Id.* (emphasis in original). Plaintiff claims she complained at this point that the handcuffs were too tight, but was told "too bad" by the Defendant Officers. *Id.* Plaintiff did admit in her deposition that she did not suffer any injury to her wrists as a result of the handcuffs allegedly being too tight. *See* Dkt. 28, Ex. E., p. 60. Plaintiff asserts she advised the Defendant Officers that her elbow was in pain, that her jaw was hurting, and that her physical disabilities meant they had to be careful with how they handled her. Plaintiff contends that Defendant Officers ignored her, instead lifting "**Plaintiff off of the floor by the chain between the two handcuffs.**" *Id.*, at 8 (emphasis in original).

Plaintiff asserts she was then escorted from her bedroom out of her home and forced into a police car. Plaintiff contends she informed Defendant Officers that she would have no room in the police car, as one of the passenger seats was pushed as far back as it could go, but was again ignored. After approximately five minutes, Plaintiff was removed from the police car and put

5

into an ambulance. Plaintiff argues she was taken to Henry Ford Hospital, where Plaintiff claims the medical staff confirmed that "there was nothing wrong with Plaintiff and she was not suicidal." *Id.*

### C. PROCEDURAL BACKGROUND

On April 18, 2013, Plaintiff filed her complaint in this Court against Defendants, alleging violations of Plaintiff's Fourth Amendment rights by using excessive force (Count I); gross negligence (Count II); "Shelby Township's Constitutional Violations" (Count III); assault and battery (Count IV); false arrest/false imprisonment (Count V); and violation of Plaintiff's Fourth Amendment rights through illegal search and seizure (Count VI). On May 16, 2013, this Court entered an Order dismissing without prejudice each of Plaintiff's state law claims, i.e., Counts II, IV and V [dkt. 8].

## III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

6

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff's three remaining counts are all brought pursuant to 42 U.S.C. § 1983 ("§ 1983"). Section 1983 is not itself a source of substantive rights, but rather provides a right of action for the vindication of independent constitutional guarantees. *See Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990). In order to prevail on a civil rights claim under § 1983, Plaintiff must establish: (1) a person acting under color of state law, (2) deprived Plaintiffs of a right secured by the U.S. Constitution or laws of the United States. *See, e.g.*, *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006).

Defendants assert that the evidence collected and arguments presented in this matter indicate that none of Plaintiff's constitutional rights have been violated. As such, Defendant Officers Lehman, Jensen and Zuk all insist they are entitled to summary judgment on the basis of qualified immunity. Further, Defendant Shelby Township asserts it is entitled to summary

judgment because Plaintiff has failed to provide any evidence of an official policy or custom practiced by Defendant Shelby Township that caused some deprivation of Plaintiff's civil rights.

### A. DEFENDANT OFFICERS LEHMAN, JENSEN AND ZUK (COUNTS I AND VI)

Counts I and VI of Plaintiff's complaint allege that Defendant Officers Lehman, Jenzen and Zuk violated Plaintiff's Fourth Amendment rights in a number of ways. Defendant Officers Lehman, Jenzen and Zuk argue that their actions do not amount to a violation of any of Plaintiff's civil rights, and that they are thus entitled to protection under qualified immunity.

Government officials are shielded from liability under the doctrine of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pierson v. Ray*, 386 U.S. 547 (1967). In order to determine whether a government official is entitled to qualified immunity, the Court performs a two-step analysis. The Court first must consider whether the alleged facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court then must decide "whether the right was clearly established." *Id*. To conclude that a right is clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The burden is on the plaintiff to show that the defendant is not entitled to qualified immunity. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006).

### I.   Count VI

Plaintiff argues the Defendant Officers violated her Fourth Amendment rights by failing to knock and announce their presence prior to entering her home. Plaintiff contends that no

8

exigent circumstances existed that would justify this warrantless entry. Further, Plaintiff asserts the Defendant Officers violated her Fourth Amendment rights by illegally arresting her. As such, Plaintiff argues these claims must survive Defendants' motion for summary judgment. The Court is not convinced.

### a. Plaintiff's Unlawful Entry Claim is Meritless

It is true that the "Fourth Amendment generally prohibits warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (internal citations omitted). The Supreme Court and Sixth Circuit have recognized several exceptions to this general prohibition. One such exception permits warrantless entry if exigent circumstances exist. *See Brigham City, Utah v. Staurt*, 547 U.S. 398, 403 (2006); *see also Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). "Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant including the need to assist persons who are seriously injured or threatened with such injury." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.,* 724 F.3d 687, 695 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 2696 (U.S. 2014) (internal citations omitted). "The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Ewolski*, 287 F.3d at 501.

The Court finds that the facts, viewed in the light most favorable to the Plaintiff, indicate exigent circumstances existed such that the Defendant Officers' warrantless entry into Plaintiff's residence was objectively reasonable. In reviewing whether exigent circumstances were present, the Court considers the totality of the circumstances and the situation as it was presented at the time. *See U.S. v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006). All three Defendant Officers

assert that messages sent from dispatch indicated Plaintiff was suicidal, had threatened to kill a sibling and then herself, and was in possession of a firearm.  Further, upon arrival at Plaintiff's residence, the Defendant Officers confirmed with Daratony that Plaintiff had expressed suicidal thoughts, was in possession of a firearm, and was saying she was going to shoot herself and her brother. The Court finds that this is the sort of credible and reliable evidence that the Sixth Circuit has previously found justified warrantless entry due to exigent circumstances. *See Huffman*, 461 F.3d at 785; *see also Nelms v. Wellington Way Apartments, LLC*, 513 F. App'x 541, 546 (6th Cir. 2013).

Plaintiff does not dispute that the Defendant Officers received this information.  Instead, Plaintiff asserts that exigent circumstances did not exist because the Defendant Officers did not activate their lights and sirens when travelling to Plaintiff's residence.  Plaintiff fails to provide any authority whatsoever to support this contention.  Indeed, Plaintiff provides no evidence or authority to suggest that the Defendant Officers were unreasonable in believing persons inside of Plaintiff's residence – including Plaintiff – were threatened with serious injury.

As such, the Court finds exigent circumstances existed such that Defendant Officers Lehman, Jenzen and Zuk did not violate Plaintiff's Fourth Amendment rights by entering her residence without a warrant.[5]  Further, the existence of these exigent circumstances renders irrelevant any examination concerning whether the Defendant Officers failed to knock and announce their presence prior to entering the residence or whether the Defendant Officers were given proper consent prior to entering the residence.

---

[5] Although Plaintiff argues "genuine factual disputes preclude the granting of qualified immunity," the Court finds Plaintiff makes absolutely no attempt to apply this blanket statement to the matter at hand. As such, the Court relies on the Sixth Circuit's finding that "in a case where the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law." *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992).

### b. Plaintiff's Unlawful Arrest Claim is Meritless

Plaintiff next argues that her "arrest" was unlawful because Defendants have failed to provide any evidence that the Defendant Officers perceived "a suicidal Plaintiff." Plaintiff also claims that she never made any statements with respect to hurting herself or anyone else. Plaintiff thus argues that the Defendant Officers lacked the "requisite legal justifications to arrest Plaintiff."

"The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to [herself] or others." *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997). "A showing of probable cause in the mental health seizure context requires only a probability or substantial chance of dangerous behavior, not an actual showing of such behavior." *Ziegler v. Aukerman*, 512 F.3d 777, 783 (6th Cir. 2008) (internal citations omitted); *see also Monday*, 118 F.3d at 1102 ("Just as actual innocence will not render an arrest invalid if it is based on then-existing probable cause that criminal activity is occurring . . . a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition."). Finally, "[a] reviewing court must assess the existence of probable cause from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005)

The Court finds that the facts presented,[6] viewed in the light most favorable to the Plaintiff, nevertheless indicate Defendant Officers Lehman, Jenzen and Zuk were reasonable in finding probable cause existed so as to warrant detaining Plaintiff for a psychiatric evaluation. As has been established, the Defendant Officers were working with information from dispatch

---

[6] The Court notes that "[d]etermining whether probable cause existed presents a jury question, unless there is only one reasonable determination possible." *Radvansky*, 395 F.3d at 302 (internal citations omitted).

that Plaintiff had expressed suicidal thoughts, that she possessed a firearm, and that she had threatened to kill a sibling and herself. Further, upon entry of Plaintiff's residence, the Defendant Officers report that Plaintiff looked "disheveled," that she was "frantic and out of control," and was "very jittery" and was "incoherent." *See* Dkt. 28, Ex. D., p. 28; Ex. B., p. 21; Ex. C, p. 18. These same concerns were also expressed by Daratony when she interacted with Plaintiff on the day in question. *See* Dkt. # 28, Ex. A, p. 15. Plaintiff provides little resistance to these facts, stating in one lone paragraph in her response to Defendants' motion that: (1) she testified that she never made suicidal statements, and (2) "yelling and screaming" is not enough to provide the legal justification to detain Plaintiff. The Court finds this argument unconvincing, as the facts established above indicate that the situation presented a "probability . . . of dangerous behavior" such that probable cause existed for the Defendant Officers to detain Plaintiff.

Therefore, the Court finds that Plaintiff failed to satisfy her burden proving Defendant Officers Lehman, Jenzen and Zuk are not entitled to qualified immunity on this count.[7] Accordingly, with respect to Count VI, the Court grants Defendants' motion for summary judgment.

## II. Count I: Excessive Force

Plaintiff next asserts that Defendant Officers Lehman, Jenzen and Zuk violated her Fourth Amendment rights by using excessive force to detain her. Specifically, Plaintiff claims that the Defendant Officers handcuffed her excessively tightly and failed to loosen her handcuffs when she requested such relief. Plaintiff further claims the Defendant Officers violated her constitutional rights when they lifted her up by the chain between her handcuffs. Plaintiff asserts both of these incidents illustrate the Defendant Officers used excessive force, and that

---

[7] As Plaintiff failed to provide sufficient evidence that a constitutional right had been violated, the Court need not address whether such a right was clearly established in order to conclude qualified immunity applies.

Defendants' motion for summary judgment with regards to this claim must thus be denied. Defendants assert no excessive force was ever used in detaining or moving Plaintiff.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' [sic] against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396, (1989) (internal citations omitted). As the Supreme Court illuminated,

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

> *Id.*

The Sixth Circuit further explained that, "[i]n evaluating the reasonableness of force used, courts should examine the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). Additionally, "[c]laims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (internal citations omitted). "In determining whether there has been a violation of the Fourth Amendment, we consider not the 'extent of the injury inflicted' but whether an officer subjects a detainee to 'gratuitous violence.'" *Id*. (internal citations omitted).

      a. <u>Plaintiff's Tight Handcuffs Excessive Force Claim is Meritless</u>

Plaintiff's first allegation of excessive force involves excessively tight handcuffs. While the Fourth Amendment prohibits unduly tight handcuffing in the course of detaining a person, not all allegations of tight handcuffing amount to excessive force. *See Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). In order for such a claim to survive summary judgment, "plaintiff must offer sufficient evidence to create a genuine issue of material fact that (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Morrison v. Board of Trustees of Green Tp.*, 582 F.3d 394, 401 (6th Cir. 2009).

The Court finds that, in viewing the facts in a light most favorable to the Plaintiff, Plaintiff has failed to satisfy this three-pronged test. Even if the Court accepts that Plaintiff complained to the Defendant Officers that her handcuffs were too tight and that the Defendant Officers ignored her complaints, Plaintiff fails to satisfactorily prove she experienced some physical injury resulting from her handcuffing. Although Plaintiff now alleges in her response to Defendants' motion that there was "bruising" on her wrists as a result of the handcuffing, Plaintiff contradicts this statement in her deposition by admitting that she did not suffer any injury to her wrists as a result of the handcuffs allegedly being too tight. *See* Dkt. 28, Ex. E., p. 48. Further, the EMS medical report indicates that Plaintiff "stated she was uninjured and did not need to go to the hospital, [Plaintiff] stated several times she was not injured." *See* Dkt. 28, Ex. G, p. 8. While Plaintiff also asserts she suffered left elbow pain as a result of her detainment, she has offered no evidence that any pain she felt in her left elbow was a result of the allegedly too tight handcuffing. As such, the Court finds that Plaintiff does not offer sufficient evidence to

14

create a genuine issue of material fact that the Defendant Officers violated her constitutional rights when handcuffing her.

> b. Plaintiff's Lifting by the Handcuffs Excessive Force Claim Presents Genuine Issues of Material Fact

In her second excessive force claim, Plaintiff asserts the Defendant Officers violated her rights when they pulled her up by the chain between her handcuffs. Plaintiff claims this action was taken despite that fact that she never resisted the Defendant Officers' attempts to detain her, and caused her to suffer significant pain in her elbow.

The Court must review the event in question in segments when determining whether an officer's actions are reasonable. *See Morrison v. Board of Trustees of Green Tp.*, 582 F.3d 394, 401 (6th Cir. 2009). Further, the Sixth Circuit has constantly held that "use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law." *Id.*, at 406. Likewise, the Sixth Circuit has previously indicated that pulling on the chain between a detainee's handcuffs once they were detained could constitute an excessive use of force. *See Vance v. Wade*, 546. F.3d 774, 783 (6th Cir. 2008); *see also Williams-Turk v. Bazzy*, Case No. 09-14786, 2011 WL 2837618 at *6 (E.D. Mich. July 18, 2011) (J. Edmunds).

The Court thus finds that, in considering the totality of the circumstances and viewing the facts in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether the Defendant Officer's used excessive force in raising Plaintiff to her feet after handcuffing her. Plaintiff's claim of being raised to her feet by the chain between her handcuffs is refuted only by the deposition testimony of the Defendant Officers. The Court finds that such assertions do not satisfy Defendant's burden of establishing that no genuine issue of material fact exists. As such, the Court finds that Plaintiff has presented a genuine issue of material fact that her constitutional rights were violated by the Defendant Officers alleged use of excessive force.

The Court must next assess whether Plaintiff has demonstrated that the constitutional right allegedly violated is clearly established. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). As indicated above, a right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* With this standard in mind, the Court finds that a reasonable officer in the Defendant Officers' position would know that lifting Plaintiff by the chain between her handcuffs would constitute excessive force, thereby violating Plaintiff's Fourth Amendment rights. While all three Defendant Officers state in their depositions that Plaintiff was not lifted by the chain between her handcuffs, all three acknowledged that to do so would constitute excessive force. *See* Dkt. # 28, Ex. B, p. 36; Ex. C, p. 28; Ex. D, p. 24–25. As such, the Court finds that Plaintiff has presented a genuine issue of material fact that her constitutional rights were violated and that the right violated was clearly established.

This does not end the Court's inquiry, however, as the Court finds Plaintiff has failed to provide sufficient evidence that *all three* Defendant Officers violated one of her clearly established rights. All three Defendant Officers argue that Defendant Lehman was in no way involved with the process of taking Plaintiff to the floor, handcuffing her, and subsequently lifting Plaintiff to her feet. Instead, the Defendant Officers assert Defendant Officer Lehman was several feet away from Plaintiff when Defendant Officers Jenzen and Zuk took Plaintiff to the ground. *See* Dkt. # 28, Ex. B, p. 32; Ex. C, p. 19; Ex. D, p. 20. The Defendant Officers also contend only Defendant Officers Jenzen and Zuk lifted Plaintiff to her feet, while Defendant Officer Lehman was calling for an ambulance. *See* Dkt. # 28, Ex. B, p. 35–36; Ex. C, p. 28; Ex. D, p. 24–25. Plaintiff provides no evidence that Defendant Officer Lehman ever used any excessive force in lifting Plaintiff from the floor. In fact, Plaintiff fails to even dispute

16

Defendants' argument that Defendant Officer Lehman was not involved in handcuffing Plaintiff and lifting Plaintiff to her feet.[8]

Therefore, the Court finds that Defendant Officer Lehman is entitled to qualified immunity for this claim. The Court further finds that Plaintiff has presented a genuine issue of material fact with regards to the alleged use of excessive force by Defendant Officers Jenzen and Zuk when lifting Plaintiff by the chain between her handcuffs. As such, Plaintiff has satisfied her burden of showing that Defendant Officers Jenzen and Zuk are not entitled to qualified immunity or summary judgment on this count.

### c. Conclusion

For the reasons stated above, Defendants' motion for summary judgment with respect to Count I is denied in part and granted in part.

### B. DEFENDANT SHELBY TOWNSHIP

Plaintiff's final claim alleges Defendant Shelby Township committed "constitutional violations" against Plaintiff. Specifically, Plaintiff alleges Defendant Shelby Township practiced or permitted policies or customs that resulted in constitutional violations to Plaintiff by failing to supervise its police officers. Defendants assert this claim must fail for several reasons, including Plaintiff's inability to identify an official policy or custom practiced by Defendant Shelby Township that has caused some deprivation of her civil rights.

As established by the Supreme Court, a local government is liable under § 1983 only when a plaintiff can prove an injury inflicted by its employees results from the execution of an

---

[8] The Court notes that Plaintiff's complaint does vaguely allude to a potential constitutional violation committed by Defendants when they "failed to intervene" to stop the "excessive force" that was allegedly occurring. As noted above, however, Plaintiff offers no evidence or argument to support this naked assertion. Further, the Court finds that the facts, viewed in the light most favorable to Plaintiff, do not indicate Defendant Officer Lehman had the opportunity or means to prevent any excessive force that may have occurred. *See Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997). As such, the Court finds there can be no viable claim for failure to intervene in this matter.

official policy or custom. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). A local government may be found liable under § 1983 if a plaintiff can prove the local government failed to train or supervise its employees. *See Hays v. Jefferson Cty., Ky.*, 668 F.2d 869 (6th Cir. 1982). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "This 'failure to supervise' theory of municipal liability is a rare one. Most agree that it exists and some allege they have seen it, but few actual specimens have been proved . . . [Plaintiff's claim] must meet the 'rigorous standards of culpability and causation' that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its 'facially lawful' policies." *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010) (internal citations omitted).

After reviewing the arguments and evidence presented, the Court finds that Plaintiff has failed to meet the "rigorous standards of culpability and causation" required for this Court to find Defendant Shelby Township liable for a failure to supervise claim under § 1983. Plaintiff does not provide sufficient evidence that the constitutional violations allegedly committed by the Defendant Officers were the result of Defendant Shelby Township failure to supervise. Specifically, Plaintiff's claim fails at each stage of the *Ellis* analysis mentioned above. Plaintiff provides only assertions that Defendant Shelby Township's supervision of the Defendant Officers was inadequate for the tasks performed. Further, Plaintiff offers only a one sentence allegation that this asserted inadequacy is the result of Defendant Shelby Township's deliberate

indifference. The Court finds this allegation does not provide the evidence needed to deliberate indifference. *See Ellis ex rel. Pendergrass*, 455 F.3d at 700–701. (6th Cir. 2006) (stating that the only situations that could be used to justify a finding of deliberate indifference in a failure to supervise claim are "failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction . . . [and] where a city fails to act in response to repeated complaints of constitutional violations by its officers."). Finally, Plaintiff fails to provide even a scintilla of evidence that this alleged inadequacy was closely related to or actually caused her alleged injury. These failures warrant dismissal of Plaintiff's claim. *See Hunter v. Wayne County*, Case No. 11-11224, 2013 WL 249637 (E.D. Mich. January 23, 2013) (J. Drain).

As such, the Court finds that Defendant Shelby Township is entitled to summary judgment on Count III of Plaintiff's complaint.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [dkt. 28] is DENIED IN PART and GRANTED IN PART.

Specifically, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment with regards to Counts III and VI of Plaintiff's complaint is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment with regards to Plaintiff's tight handcuff excessive force claim in Count I of Plaintiff's complaint is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment with regards to Plaintiff's lifting by the handcuff chain excessive force claim in Count I of Plaintiff's Complaint against Defendant Officer Lehman is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment with regards to Plaintiff's lifting by the handcuff chain excessive force claim in Count I of Plaintiff's Complaint against Defendant Officers Jenzen and Zuk is DENIED.

IT IS SO ORDERED.

                                                                    s/Lawrence P. Zatkoff
                                                                    HON. LAWRENCE P. ZATKOFF
Date:  September 16, 2014             U.S. DISTRICT JUDGE